COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-383-CR

 

THOMAS
FRANK CHERRY, JR.                                              APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 235TH
DISTRICT COURT OF COOKE COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  Introduction

In two points, Appellant Thomas Frank Cherry
appeals from his conviction for aggravated robbery with a deadly weapon,
complaining that the trial court erred by admitting evidence of an alleged
sexual assault during punishment.  We
affirm.








                          II.  Factual and Procedural Background

Cherry was charged with aggravated robbery and
aggravated sexual assault alleged to have occurred on May 6, 2007.  In July 2008, Cherry pleaded guilty to
aggravated robbery with a deadly weapon but maintained that he did not commit
aggravated sexual assault.

Before the punishment phase of the aggravated
robbery trial began, and outside the presence of the jury, Cherry asked the
trial court for an instruction in accordance with his motion in limine.  Specifically, Cherry=s defense
counsel argued as follows:

. . . I just wanted to
ask the Court for an instruction in accordance with the motion [in] limine that
the Court granted on December 10th, 2007. 
Basically, it=s my understanding that
the State had chosen to try these cases separately in an effort to stack
sentences on the Defendant.  We are
asking the Court to instruct the State not to reference in accordance with our
part B of the motion in limine under extraneous offenses anyChe=s accused of robbery and
theCwhat he=s alleged to have taken
is money.  All the investigation that I
have been able to perform on this, you know, according with the State=s own reports, the money
was taken before any alleged aggravated sexual assault was committed,
therefore, I=m asking, to avoid
irreparable harm to my client, I=m asking for the Court to instruct the State not
to reference the alleged sexual assault which occurred after the robbery which
the Defendant pleaded guilty to.

 

After hearing arguments from both sides, the trial court stated that
it would allow the State to present the evidence.








During the State=s
opening statement, the prosecutor stated that when two teenagers, Brittany and
CJ, gave Cherry a ride in Brittany=s car,
he pulled a gun on them, forced them out of the car, and robbed Brittany of her
money, and then A[Cherry] went back to where
Brittany was and he forced her at gunpoint back into the vehicle and took her
to yet another rural location here in Cooke County where he forced her at
gunpoint to perform oral sex on him.@  Defense counsel objected, stating Aat this
time[,] I=m going to reiterate any
previous objections and move to strike and ask for a mistrial.@  The trial court overruled his objection,
denied the motion to strike, and denied the request for a mistrial.

At trial, the State called Brittany, who
testified that she was seventeen when she went to the car wash on Highway 82
with her boyfriend, CJ, on May 6, 2007. 
She stated that Cherry approached CJ and asked if they could give him a
ride, which they did.  When they left the
car wash, Brittany was driving, CJ was in the front passenger seat, and Cherry
was in the back seat.  Not long after
they left the car wash, Cherry pulled out a gun and held it to CJ=s head.








Although she was Ascared
and frozen with fear,@ Brittany kept driving and
eventually ended up on a dirt road where Cherry made them get out of the
car.  Cherry asked if they had any money,
and Brittany gave him $20 or $25 from her purse because he had his gun pointed
at them.  He next made Brittany and CJ
walk in opposite directions from each other, and he got into Brittany=s car
and turned it around.  Cherry drove past
Brittany, stopped, and made her get back into the car, threatening her with the
gun.  Cherry drove while pointing the gun
at Brittany, and he made her perform oral sex on him as he drove.  Brittany testified that Cherry also forced
her to pull her pants down, that he had penetrated her vagina with his fingers,
and that he then licked his fingers.  He
eventually stopped the car by a bridge, let Brittany get out, and told her to
never give strangers a ride.

When Cherry let her out of the car, she tried to
make herself throw up because she did not know if Cherry had a sexually transmitted
disease.  Brittany testified that after
Cherry drove away in her car, she began walking back up the highway when a
couple stopped to help her.  She told
them what had occurred, and the woman in the car let Brittany use her phone to
call her mother and then called 911. 
After a policeman arrived with CJ in his car, they went back to the car
wash and then to the hospital, where a sexual assault examination was
performed.  Two days later, Brittany
picked Cherry=s photo out of six-person photo
lineup.  She testified that a few days
later authorities notified her that they had recovered her car but she could
not bear to drive it anymore.








On cross-examination, Brittany testified that
after Cherry forced her back into the car they drove for three minutes or so at
high speed with her head down (performing oral sex on Cherry) before she could
see the road again, but that three minutes was an estimate because AI wasn=t
keeping time.@ 
By the time she could see out of the car, they were back on the highway.

The State also called CJ, who testified that
Brittany and he went to the car wash where they saw Cherry, whom CJ had never
seen before.  He spoke to Cherry as they
were both using the vacuum at the car wash, and Cherry asked them for a ride
because his car would not start.  They
all got in the car, with Cherry in the back, and after they pulled out of the
car wash, Cherry pulled a gun and pointed it at CJ=s
head.  CJ testified that the small black
gun tendered by the State looked like the gun Cherry used to threaten
them.  Cherry told Brittany where to
drive, eventually stopping down a dirt road, where Cherry ordered them to get
out of the car and made Brittany give him her money.








CJ testified that after Cherry got Brittany=s money,
he told them to walk in different directions away from the car.  As CJ walked, he looked back and saw Cherry
drive back toward Brittany and stop the car next to her.  He saw Brittany get in, testifying, Ashe was
forced in the car.@ 
As soon as the car drove off, CJ pulled out his cell phone and called
his mother, then 911.  He also described
how officers found him, drove to where they found Brittany, went back to the
car wash, and later took Brittany to the hospital.  CJ could not positively identify Cherry from
a photo lineup, although he thought he recognized him, but he positively
identified him in court.

Cooke County Deputy Sheriff Tom Stephens
testified that he was working on the date of the offense and heard a radio
broadcast regarding the robbery and a description of a stolen maroon SUV
heading southbound on Highway 51.  Stephens
saw the vehicle and started to make an investigative stop but lost the vehicle
in traffic.  After losing the vehicle,
Stephens returned to Gainesville and talked to a visibly-shaken Brittany about
the sexual assault.  On
cross-examination, Stephens was asked about distances on the dirt road and
highways where the offense occurred and agreed with defense counsel=s
assertion that travel time from the dirt road to where Brittany was found was Anot that
long.@








Texas DPS forensic scientist Kimberly Mack
testified that she tested the DNA from the rape kit submitted for Brittany, but
the test was negative for semen.  She
testified that in cases involving forced oral sex, this was not unexpected
because semen does not survive long in the oral cavity and because people tend
to spit or swallow, resulting in loss of the evidence.  Mack explained that the length of time
between the assault and exam, whether the victim ate or drank between the
assault and the exam, and the particular procedure followed by the nurse
collecting the sample could all affect the outcome of the test.

The jury assessed punishment at seventy five
years=
confinement and a $10,000 fine, and the trial court sentenced Cherry
accordingly.  This appeal followed. 

                                      III.  Motion in Limine

In his first point, Cherry complains that the
trial court erred by admitting evidence as to the alleged aggravated sexual
assault despite Cherry=s motion in limine, his
objection to the introduction of said evidence, his motion to strike, and his
motion for mistrial.








With regard to his complaint regarding the
admission of evidence despite his motion in limine, it is well settled that
motions in limine do not preserve error. 
See Roberts v. State, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007),
cert. denied, 128 S. Ct. 282 (2007); Martinez v. State, 98 S.W.3d
189, 193 (Tex. Crim. App. 2003); Romo v. State, 577 S.W.2d 251, 252
(Tex. Crim. App. 1979).  This is true
whether the motion is granted or denied. 
Willis v. State, 785 S.W.2d 378, 384 (Tex. Crim. App. 1989), cert.
denied, 498 U.S. 908 (1990); Harnett v. State, 38 S.W.3d 650, 655
(Tex. App.CAustin 2000, pet. ref=d).  AA ruling
on a motion in limine does not purport to be one on the merits but one
regarding the administration of the trial.@[2]  Harnett, 38 S.W.3d at 655.








Furthermore, A>[f]or
error to be preserved with regard to the subject matter of [a] motion in
limine, it is absolutely necessary that an objection be made at the time when
the subject is raised during the trial.=@  Wilkerson v. State, 881 S.W.2d 321,
326 (Tex. Crim. App. 1994) (emphasis added) (quoting Gonzales v. State,
685 S.W.2d 47, 50 (Tex. Crim. App.1985)), cert. denied, 513 U.S. 1060
(1994); see also Brazzell v. State, 481 S.W.2d 130, 131 (Tex. Crim. App.
1972) (A[F]or
error to be preserved on appeal with regard to the admission of inadmissible
evidence, objection thereto should be made at the time the evidence is offered.@).  An examination of the record reveals that no
objection was made to the admission of evidence regarding the sexual assault
when the evidence was offered through Brittany=s
testimony.[3]  Hence, nothing was preserved for our review,
whether through the motion in limine or through objection to the admission of
the evidence.  See Tex. R. Evid.
103(a)(1) (requiring party to timely object when evidence is admitted); Tex. R.
App. P. 33.1(a)(1)(A) (requiring timely and specific objection stating grounds
with sufficient clarity to advise trial court of basis for complaint).








Finally, with regard to the motions to strike and
for mistrial made during the State=s
opening statements, the State=s sexual
assault evidence was admissible under article 37.07, section 3(a)(1) of the
code of criminal procedure.[4]  As such, the trial court=s
rulings on Cherry=s motions were correct.[5]  Cherry=s first
point is overruled.

                                 IV.  Sexual Assault Evidence

Cherry phrases his second point as follows:








The Court erred in admitting evidence that did
not substantially establish that aggravated sexual assault had occurred.  Said evidence was not corroborated.  Said evidence presented a strong possibility
that the alleged assault could not have occurred.  Furthermore the State of Texas failed to
provide easily obtainable evidence to support the allegation of sexual assault.  Said evidence created a substantial bias
against defendant with regard to sentencing.

A trial court=s
decision to admit evidence is reviewed under an abuse of discretion
standard.  Allen v. State, 108
S.W.3d 281, 284 (Tex. Crim. App. 2003), cert. denied, 540 U.S. 1185
(2004).  The reviewing court may reverse
the trial court=s decision only if the ruling is
outside the zone of reasonable disagreement. 
Id.








During the punishment phase of a criminal trial,
the State may offer into evidence any matter the trial court deems relevant to
sentencing.  See Tex. Code Crim.
Proc. Ann. art. 37.07 ' 3(a)(1).  Evidence may be admitted as to the defendant=s prior
criminal record, his general reputation, his character, and to the
circumstances of the offense for which he is being tried.  Id. 
In addition, the State may introduce evidence of an extraneous crime or
bad act provided the bad act is proven beyond a reasonable doubt to have been
(1) an act committed by the defendant, or (2) an act for which he could be held
criminally responsible.  Id.; Fields
v. State, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999); see Huizar v.
State, 12 S.W.3d 479, 482B83 (Tex.
Crim. App. 2000).  Whether an extraneous
offense or bad act is established beyond a reasonable doubt is a question of
fact for the jury, not a preliminary question of admissibility for the trial
court.  See Mitchell v. State, 931
S.W.2d 950, 953B54 (Tex. Crim. App. 1996); Nanez
v. State, 179 S.W.3d 149, 151B52 (Tex.
App.CAmarillo
2005, no pet.).  The trial court properly
instructed the jury that before it could consider extraneous evidence in
assessing punishment, it must be satisfied beyond a reasonable doubt that the
acts are attributable to the defendant.  See Huizar, 12 S.W.3d at 482B83.  Considering the foregoing, we hold that the
trial court did not abuse its discretion by admitting the evidence of
aggravated sexual assault.








Furthermore, with regard to corroboration,
although Cherry urges that under rule 803, Aevidence
of corroborating circumstances must clearly indicate trustworthiness,@ this is
a hearsay rule.  See Tex. R. Evid.
803 (AHearsay
Exceptions: Availability of Declarant Immaterial@).  Rule 803(24) sets forth the requirement of
corroboration when the hearsay statement at issue involves a statement
against interest.  See Tex. R.
Evid. 803(24) (defining statement against interest as A[a]
statement which was at the time of its making . . . so far tended to subject
the declarant to . . . criminal liability . . . that a reasonable person in
declarant=s position would not have made
the statement unless believing it to be true. 
In criminal cases, a statement tending to expose the declarant to
criminal liability is not admissible unless corroborating circumstances clearly
indicate the trustworthiness of the statement.@).  There are no hearsay issues presented by this
case that meet rule 803(24)=s
corroboration requirements.

Cherry further argues that the sexual assault
could not have occurred because Brittany testified that it happened during a
three-minute period when he was driving at high speed, the State did not test
the car for bodily fluids, and the forensic expert found no evidence of semen,
which, taken together, meant that the sexual assault was impossible and the
court should have therefore excluded all evidence of it.  Nonetheless, the jury was properly instructed
regarding the State=s burden of proof, and it was
within the jury=s province to weigh the evidence
and determine whether the aggravated sexual assault was proven beyond a
reasonable doubt.  We overrule Cherry=s second
point.

                                          V.  Conclusion

Having overruled both of Cherry=s
points, we affirm the judgment of the trial court.

PER
CURIAM

 

PANEL:  MCCOY, J.; CAYCE, C.J.; and LIVINGSTON, J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: October 1,
2009











[1]See Tex. R. App. P. 47.4.





[2]A review of Cherry=s motion in limine
reflects that he asked the trial court to enter an order instructing the State
not to mention, allude, or refer to, in any manner, any extraneous offenses by
Cherry in the jury=s presence, and A[p]rior to specific
mention of extraneous offenses, a hearing should be immediately held outside
the presence of the jury@ for a determination of,
among other things, the purpose for which the extraneous offense was offered,
its relevance, whether it could be shown beyond a reasonable doubt that Cherry
committed the alleged conduct, and whether the probative value of the evidence
was outweighed by danger of unfair prejudice and confusion of the issue.  Cherry received his requested hearing outside
the jury=s presence, and then the
trial court decided to allow the State to present the complained-of evidence.





[3]Specifically, Cherry did
not object when Brittany testified, A[H]e made me perform oral on him,@ and he only objected on
the question=s form (Aasked and answered@) when the State asked, AAnd he forced you to put
his penis in your mouth while he was driving down the road?@





[4]Article 37.07, section
3(a)(1) of the code of criminal procedure allows the State to offer

 

evidence of an extraneous
crime or bad act that is shown beyond a reasonable doubt by evidence to have
been committed by the defendant or for which he could be held criminally
responsible, regardless of whether he has previously been charged with or
finally convicted of the crime or act.

 

Tex. Code Crim. Proc.
Ann. art. 37.07, ' 3(a)(1) (Vernon
Supp. 2008).  The court=s charge correctly
instructed the jury on the burden of proof required by article 37.07, section
3(a)(1).





[5]In support of his
argument, Cherry cites Mitchell v. State, No. 14-96-00116-CR, 1998 WL
78122 (Tex. App.CHouston [14th Dist.] Feb.
26, 1998, no pet.) (not designated for publication), which discusses improper
statements in jury arguments, and Griggs v. State, 213 S.W.3d 923 (Tex.
Crim. App.), cert. denied, 128 S. Ct. 153 (2007), which discusses
motions for mistrial.  Neither the facts
nor the holdings in these cases are germane to the issues presented hereCCherry=s complaint about the
prosecutor=s comment during the
State=s opening statement was
made after the trial court had ruled that the State could go into evidence of
the aggravated sexual assault, and he subsequently failed to object to the
admission of that evidence during the trial. 
Cf. Griggs, 213 S.W.3d at 927 (holding that appellant=s motion for mistrial was
untimely and failed to preserve his complaint for appellate review); Mitchell,
1998 WL 78122, at *3 (holding that appellant=s motion for mistrial was properly denied when
the court gave an instruction to disregard, even though appellant contended
that the State=s closing argument that he
was a Aviolent, angry person@ was clearly calculated
to inflame the jury and was harmful).